UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

JESUS HERNANDEZ RAMIREZ,

    Petitioner,

v.                                                                          No. 1:26-CV-247-H

MARKWAYNE MULLIN, et al.,

    Respondents.

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Jesus Hernandez Ramirez, a native and citizen of Mexico, is one such alien, having illegally entered the United States 17 years ago. His habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands his immediate release or a bond hearing based on the Fifth Amendment, the Supremacy Clause, and the *Accardi* doctrine. Dkt. No. 1.

*Buenrostro-Mendez* did not foreclose such constitutional and regulatory challenges. But Hernandez Ramirez's claims fail on the merits. His due process claim is unavailing. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Hernandez Ramirez are not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. The remaining claims fail, too. His equal-protection claim is frivolous, there is no cause of action under the Supremacy Clause, and his *Accardi* claim is not cognizable in habeas.

Because the legal arguments and facts presented in the petition are either meritless or otherwise indistinguishable from those addressed in the Court's prior decisions denying relief, "it appears from the application that the applicant or person detained is not entitled" to a writ of habeas corpus.  28 U.S.C. § 2243.  Thus, while the Court would ordinarily issue an order to show cause, it exercises its discretion to forgo that step here.  *Id.*; *see Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998).  The petition (Dkt. No. 1) is denied.

**1.    Background**

It is unclear how many times Hernandez Ramirez has unlawfully entered the United States.  But this much is known: While in the United States unlawfully, Hernandez Ramirez was arrested for driving while intoxicated, failure to identify as a fugitive from justice, violating a state open-container law, and—as recently as December 2025—possession of a controlled substance and money laundering.  Dkt. No. 1 ¶¶ 20–22.  After his December 2025 arrest, he was transferred to ICE custody and placed into removal proceedings with a Notice to Appear.  *Id.* ¶ 22; Dkt. No. 1-1 at 2.  The NTA charged him with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 1-1 at 2; *see* 8 U.S.C. § 1182(a)(6)(A)(i).  Hernandez Ramirez is currently detained without bond at the Bluebonnet Detention Facility in Anson, Texas.  Dkt. No. 1 ¶ 1.

Hernandez Ramirez does not appear to have requested a custody redetermination hearing.  But doing so would be futile in light of the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, which held that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings.  29 I. & N. Dec. 216, 220 (BIA 2025).

Hernandez Ramirez filed a petition for a writ of habeas corpus. Dkt. No. 1. The petition states four claims for relief. His first claim contends that his detention violates his rights under the Fifth Amendment's Due Process Clause. *Id.* ¶¶ 57–62. Second, he claims that he is detained pursuant to a discriminatory classification in violation of the Fifth Amendment's equal-protection guarantee. *Id.* ¶¶ 63–68. In his third claim, he argues that his detention without individualized custody review violates the Constitution's Supremacy Clause. *Id.* ¶¶ 69–75. Finally, he raises an APA claim (which the Court construes as an *Accardi* claim) arguing that his detention without bond violates agency regulations. *Id.* ¶¶ 76–82. On the same day, he filed a motion for a temporary restraining order and preliminary injunction, requesting essentially the same relief sought in the habeas petition. Dkt. No. 3.[1]

Hernandez Ramirez acknowledges that a statutory challenge is foreclosed by *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225. *See* 166 F.4th at 498. There, the Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants

---

[1] *See George v. Noem*, No. 3:25-CV-2935, 2025 WL 3852946, at *6 (N.D. Tex. Dec. 19, 2025), *R. & R. adopted*, 2026 WL 30829 (Jan. 5, 2026) ("In short, a TRO or preliminary injunction is not a device 'to give a plaintiff the ultimate relief he seeks' through his claims." (quoting *Peters v. Davis*, No. 6:17-CV-595, 2018 WL 11463602, at *2 (E.D. Tex. Mar. 28, 2018))).

for admission fall within Section 1225(b)(2)(A)'s grasp. *Buenrostro-Mendez*, 166 F.4th at 502

(quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747, 754 (N.D. Tex. 2026)).

**2.      Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual

detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

Const. art. I, § 9, cl. 2). With 28 U.S.C. § 2241, Congress authorized federal courts to

resolve habeas petitions, including in immigration-detention cases. *Zadvydas v. Davis*, 533

U.S. 678, 687–88 (2001). Habeas exists solely to "grant relief from unlawful imprisonment

or custody." *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976). Thus, for the writ

to issue, the petitioner must be "in custody in violation of the Constitution or laws or

treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th

Cir. 1995). A court considering a habeas petition must "determine the facts, and dispose of

the matter as law and justice require." 28 U.S.C. § 2243.

**3.      Analysis**

As noted above, Hernandez Ramirez raises four claims in his habeas petition. Dkt.

No. 1 ¶¶ 57–82. The claims run the gamut; they include a Fifth Amendment procedural and

substantive due process claim, a Fifth Amendment equal-protection claim, a claim alleging

a violation of the Supremacy Clause, and an *Accardi* claim. *Id.* The Court has considered

whether the Due Process Clause,[2] the Fifth Amendment's equal-protection guarantee, and

---

[2] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 814 F. Supp. 3d 747; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

the *Accardi* doctrine[3] entitle illegal aliens to individualized bond hearings in numerous prior cases. Even so, the Court considers the arguments raised in Hernandez Ramirez's petition to address whether he is entitled to relief on any of his claims. The answer is no.

> **A.** **The Fifth Amendment does not require the government to give Hernandez Ramirez a bond hearing, and even if it did, his Supremacy Clause claim would still be frivolous.**

> **i.** **Substantive and Procedural Due Process**

First, Hernandez Ramirez claims that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 57–62. He claims that the mandatory detention scheme violates his rights to "Substantial [sic] and Procedural Due Process." *Id.* at 16. And he urges the Court that the respondents' "reliance on *Zuniga v. Lyons*" is "unavailing" because that decision "addresses only a question of statutory classification and does not resolve the" underlying constitutional question regarding "detention without an individualized custody determination." *Id.* ¶ 53 (citing *Zuniga*, 814 F. Supp. 3d 685). The Court is familiar with the analysis laid out in *Zuniga* (*see supra*, note 2) and finds this attempt at narrowing its holding both unpersuasive and inaccurate.[4]

Start with substantive due process. That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v.*

---

[3] *See, e.g.*, *Chi v. Warden, Bluebonnet Det. Facility*, No. 1:26-CV-067, 2026 WL 1062625, at *4–6 (N.D. Tex. Apr. 13, 2026) (addressing equal-protection and *Accardi* challenges to mandatory detention).

[4] Counsel is, of course, welcome to distinguish the facts of the instant case and rebut the Court's prior analysis. But counsel is not at liberty to misrepresent the holdings of legal authorities. *See* Tex. R. Prof. Conduct 3.03. Such tactics are particularly unpersuasive when the legal authority in question is the Court's own memorandum opinion.

*Glucksberg*, 521 U.S. 702, 720–21 (1997)).  While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures. The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."  *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens."  *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process."  *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.  *See also Zuniga*, 814 F. Supp. 3d at 696–97 (rejecting an identical substantive due process claim).

In support of his procedural due process claim, Hernandez Ramirez relies on the three-factor balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976).  Dkt. No. 1 ¶¶ 39– 44.  The *Mathews* test, while common, is not the only tool for resolving procedural due

process challenges.  The Supreme Court said as much: "[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims."  *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).  In fact, the "Supreme Court when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

The application of *Mathews* to Section 1226 cases is "unwarranted on the test's own terms."  *Ladak v. Noem*, 814 F. Supp. 3d 712, 725 (N.D. Tex. 2025).  The Supreme Court applied *Mathews* in *Landon v. Plasencia*, emphasizing that its balancing test was appropriate for "long-time lawful permanent resident[s]" in contrast to "detentions of aliens at the border or returning lawful permanent residents who had spent time abroad."  *Id.* (citing 459 U.S. 21, 32–34 (1982)).  Aliens in the former category have "gain[ed] admission to our country and [have begun] to develop the ties that go with permanent residence," meriting a level of due process more analogous to that of a citizen.  *Landon*, 459 U.S. at 32.  In the latter category, aliens "request[] a privilege and [have] no constitutional rights."  *Id.*; *DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." (quotation omitted)).  Critically, aliens who are released into the United States pending removal are "treated for due process purposes as if stopped at the border."  *Thuraissigiam*, 591 U.S. at 139.

As an "applicant for admission," Hernandez Ramirez has "only those rights regarding admission that Congress has provided by statute."  *Id.* at 140; *see Landon*, 459 U.S. at 32 ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding her application, for the power

to admit or exclude aliens is a sovereign prerogative."). With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission. "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. No part of the statute "says anything whatsoever about bond hearings." *Id.* Accordingly, Hernandez Ramirez is not entitled to relief as a matter of procedural due process. *See also Zuniga*, 814 F. Supp. 3d at 697 (rejecting an identical procedural due process claim).

**ii.      Equal Protection**

Hernandez Ramirez also argues that his detention violates his right to equal protection under the Fifth Amendment. Dkt. No. 1 ¶¶ 63–68. He claims that his detention without bond "results in disparate treatment . . . as compared to similarly situated immigration detainees." *Id.* ¶ 66. It is a peculiar claim, considering that the primary objection to the respondents' detention policy is its over-inclusivity. *See Buenrostro-Mendez*, 166 F.4th at 508 (Douglas, J., dissenting) ("[T]he government today asserts the authority and mandate to detain millions of noncitizens in the interior . . . on the same terms as if they were apprehended at the border.").

The Supreme Court has interpreted the Fifth Amendment to "contain[] an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976). "Fifth Amendment equal protection claims against federal actors are analyzed under the same standards as Fourteenth Amendment equal protection claims against state actors." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)). And "[t]o establish an Equal Protection Clause violation," Hernandez Ramirez

"must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Id.* (internal quotation marks omitted).

Hernandez Ramirez's argument fails many times over. He states that the "categorical denial of custody review arbitrarily distinguishes [him] from similarly situated detainees who are afforded individualized custody determinations." Dkt. No. 1 ¶ 67. He argues that this purportedly "disparate treatment lacks a rational basis where the deprivation at issue involves a fundamental liberty interest." *Id.* He does not mention the alleged basis for the government's purported discrimination, nor does he "identify any other individuals or groups that he claims were similarly situated but received superior treatment." *Butts*, 877 F.3d at 590.

Nor could he. To start, his argument is unclear as to which classes of aliens are relevantly similar. The Court perceives two potential interpretations of Hernandez Ramirez's argument. Both are frivolous.

First, by "similarly situated," Hernandez Ramirez may mean factual similarity: aliens who lack criminal convictions, a record of violence or dangerous behavior, or otherwise might merit release on bond, were they subject to discretionary detention.[5] But this argument merely rehashes the merits of *Yajure Hurtado* and *Buenrostro-Mendez*. Those decisions held that such factual similarities are irrelevant for mandatory detention under the INA. Rather, what matters is whether (1) an alien is "an applicant for admission" and (2) "the examining immigration officer determines" that the alien "is not clearly and beyond

---

[5] This argument is especially weak where, as here, Hernandez Ramirez has multiple prior arrests, including one in the last six months for a drug offense. *See Matter of Salas Pena*, 29 I. & N. Dec. 173, 174 (BIA 2025) ("[I]mmigration Judges are not limited to considering only criminal convictions in assessing whether an alien is a danger to the community."); *see also id.* at 175 (collecting cases discussing the dangerousness of drug offenses).

a doubt entitled to be admitted." *Buenrostro-Mendez*, 166 F.4th at 499 (quoting 8 U.S.C. § 1225(b)(2)(A)). Far from arbitrary or discriminatory treatment, this classification "put aliens seeking admission lawfully on equal footing with those who entered without inspection." *Id.* at 508. To the contrary, it would appear arbitrary and "strange to suggest that Congress . . . preserved bond hearings exclusively for unlawful entrants." *Id.*

Second, Hernandez Ramirez might be arguing that there are "similarly situated" aliens in a legal sense: those who have been detained pursuant to Section 1225(b)(2)(A), prevailed in habeas, and were granted release on bond. But *Yajure Hurtado* and *Buenrostro-Mendez* require mandatory detention for all applicants for admission.[6] Hernandez Ramirez does not demonstrate how this creates impermissibly arbitrary or discriminatory treatment, nor does he argue that this statutory construction is a pretext for such treatment. Insofar as Hernandez Ramirez asserts an equal protection violation because aliens outside of the Fifth Circuit or the Northern District of Texas are treated differently from aliens in other circuits or districts, "such a claim is without merit." *Serrano v. Berkebile*, No. 3:08-CV-1587, 2009 WL 81017, at *3 n.2 (N.D. Tex. Jan. 9, 2009) (noting that jurisdictional differences like a circuit split do not create equal-protection violations).

Indeed, Congress passed the IIRIRA amendments precisely to end the differential treatment of similarly situated aliens by eliminating the so-called "entry doctrine." *Garibay-Robledo*, 814 F. Supp. 3d at 755. The entry doctrine allowed "aliens who snuck into the United States without inspection" to receive "the procedural and substantive protections afforded in deportation proceedings." *Id.* Meanwhile, "aliens who presented themselves to

---

[6] Although the Secretary of Homeland Security may grant humanitarian parole on a case-by-case basis. *See Zuniga*, 814 F. Supp. 3d at 690 n.2.

– 10 –

immigration officials for inspection . . . were subject to more summary exclusion proceedings." *Id.* (internal quotation marks omitted).  By enacting the expansive definition of "applicant for admission"—the definition to which Hernandez Ramirez objects—Congress ensured the equal treatment of aliens, thereby "eliminat[ing] the previous incentives to enter the country illegally."  *Id.*

Hernandez Ramirez's preferred construction of the INA would therefore result in far more disparate treatment of similarly situated aliens.  His frivolous equal-protection claim is untenable.

### iii.        Supremacy Clause

Next, Hernandez Ramirez asserts a claim under the Supremacy Clause.  But "the Supremacy Clause does not create a cause of action."  *United States v. Texas*, 97 F.4th 268, 275 (5th Cir. 2024).  It does not "give affected parties a constitutional . . . right to enforce" federal law or the Constitution itself.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 325 (2015).  But even if it did, Hernandez Ramirez's claim would still fail for lack of a constitutional violation.  With no constitutional violation—and no predicate cause of action—his Supremacy Clause claim is meritless.

**B.      Hernandez Ramirez's *Accardi* claim is not cognizable in habeas.**

Finally, Hernandez Ramirez asserts an APA claim that the Court construes as an *Accardi* claim.[7]  *See* Dkt. No. 1 ¶ 79.  The *Accardi* doctrine requires agencies to follow their own rules and procedures.  *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.").

Merits aside, Hernandez Ramirez's *Accardi* claim "is inapposite in a petition for habeas relief."  *Huynh v. Noem*, No. 4:26-CV-017, 2026 WL 694481, *3 (N.D. Tex. Mar. 12, 2026) (O'Connor, C.J.).  Writs of habeas corpus are "available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law."  *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959).  "The Fifth Circuit has confirmed in other contexts that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available."  *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)).  In other words, habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose."  *Pierre*, 525 F.2d at 935–36.

---

[7] Hernandez Ramirez's claim is not a model of precision.  It invokes various provisions of the APA's judicial-review provisions without specifying which one, if any, forms the basis of the claim.  *See* Dkt. No. 1 ¶¶ 77–78.  In the following paragraph, it then invokes the *Accardi* doctrine.  But a straightforward APA claim would be denied for the reasons given in *Garibay-Robledo*, 814 F. Supp. 3d at 760 (citing 5 U.S.C. § 704).

Although the Court construes Hernandez Ramirez's APA claim as an *Accardi* claim, the Court reminds counsel that "unlike in cases involving pro se litigants, courts are not compelled to liberally construe the pleadings of parties represented by counsel." *Barron v. United States*, 111 F.4th 667, 679 n.1 (5th Cir. 2024) (Ramirez, J., concurring in part and dissenting in part).

– 12 –

Hernandez Ramirez does not explain why his detention—which is mandatory under 8 U.S.C. § 1225(b)(2)(A)—is rendered unlawful by virtue of the alleged regulatory noncompliance.  The Court therefore concludes that Hernandez Ramirez's *Accardi* claim is not cognizable in habeas.  *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that when a petitioner's claim will not necessarily spell speedier release, it does not lie within the core of habeas).  Because Hernandez Ramirez is subject to mandatory detention as a matter of binding Fifth Circuit precedent, *see Buenrostro-Mendez*, 166 F.4th at 498, nothing about the purported regulatory violation calls into question the validity of his confinement.

4.      **Conclusion**

In short, Hernandez Ramirez, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A).  *Buenrostro-Mendez*, 166 F.4th at 498.  The Fifth Amendment does not require release or a bond hearing in these circumstances, nor does the Supremacy Clause or the *Accardi* doctrine.  Thus, the petition for a writ of habeas corpus (Dkt. No. 1) is denied, and the motion for TRO and preliminary injunction (Dkt. No. 3) is denied as moot.

The Clerk of Court is directed to serve this Order electronically on the United States Attorney's Office for the Northern District of Texas pursuant to the current Service of Process Agreement for federal habeas petitions under 28 U.S.C. § 2241.

So ordered on May 22, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE